# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 3:25-cr-80 |
| | ) | |
| v. | ) | **ORDER DENYING GOVERNMENT'S** |
| | ) | **MOTION FOR DETENTION** |
| JORGE ELIECER GONZALEZ-OCHOA, | ) | |
| | ) | |
| Defendant. | ) | |

## I.    INTRODUCTION

This matter came before the Court pursuant to the government's oral motion to detain Defendant. Dkt. 13. Defendant was charged, by Indictment, with Count 1: Fraud and Misue of Documents in violation of 18 U.S.C. § 1546(a), Count 2: Use of Immigration Identification Document Not Lawfully Issued in violation of 18 U.S.C. § 1546(b)(1) and (b)(2) and Count 3: False Representation of Social Security Number in violation of 42 U.S.C. § 408(a)(7)(B). Dkt. 1. At the initial appearance and arraignment, the government moved for detention and a temporary order of detention was entered on October 15, 2025. Dkts. 13, 14.

A detention hearing was held on October 20, 2025. Dkt. 18. The government was represented by Attorney Kaitlyn R. Macaulay and Defendant was present in-person, with a Spanish language interpreter and by counsel, Attorney Abdel Reyes. *Id.* The government proffered testimony of Officer Jess Leibold, whom Defendant's counsel cross-examined. *Id.* Defendant proffered a possible 3rd-party custodian, Eva Sandith Castro Fuentes. *Id.* Counsel for both parties presented argument on the issue of detention or release. *Id.* The Court offered the chance for additional briefing with the government's brief due by October 24, 2025, and Defendant's brief due by October 31, 2025. *Id.* The Court took the matter under advisement. *Id.* Neither party

submitted a brief.

The government contends it is entitled to a detention hearing under 18 U.S.C. §3142(f)(2)(A) as Defendant is a "serious risk of flight" and he should be detained as there are no conditions to reasonably assure his appearance. Defendant maintains the government has not met its burden to show it is entitled to a detention hearing and, regardless, conditions exist to reasonable assure his appearance. The Court finds Defendant's contentions to be persuasive as to both matters.

## II.    APPLICABLE LAW

18 U.S.C. §3142(f) of the Bail Reform Act outlines the circumstances in which the Court "shall" hold a detention hearing:

> Detention Hearing. — The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community—
>
> > (1) upon motion of the attorney for the Government, in a case that involves—
> >
> > > (A) a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;
> > >
> > > (B) an offense for which the maximum sentence is life imprisonment or death;
> > >
> > > (C) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46;
> > >
> > > (D) any felony if such person has been convicted of two or more offenses described in subparagraphs (A) through (C) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (A) through (C) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; or
> > >
> > > (E) any felony that is not otherwise a crime of violence that

involves a minor victim or that involves the possession or use of a firearm or destructive device (as those terms are defined in section 921), or any other dangerous weapon, or involves a failure to register under section 2250 of title 18, United States Code; or

(2) upon motion of the attorney for the Government or upon the judicial officer's own motion in a case, that involves—

(A) a serious risk that such person will flee; or

(B) a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

18 U.S.C. § 3142(f).

When a defendant's charge does not fall under one of the specified categories listed in 18 U.S.C. § 3142(f)(1), and the government moves for a detention hearing under 18 U.S.C. §3142(f)(2)(A), it must prove serious risk of flight by a preponderance of the evidence. *United States v.* Cook, 87 F.4th 920, 924-25 (8th Cir. 2023).  If the government meets its burden, the Court holds a detention hearing under 18 U.S.C. §3142(e)(1) where it must determine whether any "condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. §3142(e)(1).

There is no requirement that these two inquiries be conducted in "two steps" at two separate hearings:

While we agree the government has the burden to show that the case "involves" one of the circumstances defined in § 3142(f)(1) or (2), we have never held that a detention order may not be entered unless the judicial officer conducts the rigid "two-step inquiry" urged by Cook. There are good reasons to reject this contention. First, as the statute directs, pretrial detention is an issue that should be resolved at the outset of the criminal case. Delay either keeps a person in post-arrest detention that may be unnecessary, or keeps a person who should be detained prior to trial at large in the community. *Requiring* the judicial officer to conduct a § 3142(f)(2)(A) hearing and then a second § 3142(e)(1) hearing is in our view both a waste of judicial resources and contrary to the Bail Reform Act's purposes.

*Cook*, 87 F.4th at 924. In addition, the inquiries are related:

the two inquiries, while not identical, substantially overlap. As the district court noted, the § 3142(g) factors, which govern the § 3142(e)(1) inquiry, are relevant both "to determining whether Defendant presents a serious risk of flight and [whether] there are conditions of release that will reasonably assure Defendant's appearance." *See Santos-Flores*, 794 F.3d at 1090.

*Id.* The 18 U.S.C. §3142(g) factors are:

> (1) the nature and circumstances of the offense charged ...;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person ...; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The meaning and difference between "flight" and "serious risk of flight" has been explained:

> District courts have consistently found that a defendant's risk of "flight" means something different than his risk of "nonappearance." Chief Magistrate Judge Raymond Patricco's thorough statutory analysis in [*United States v.*] *Figueroa-Alvarez* [681 F.Supp. 3d 1131 (D. Idaho 2023)] provides helpful guidance here. In *Figueroa-Alvarez*, Chief Judge Patricco examined an earlier district court opinion in [*United States v.*] *White* [2021 WL 2155441 (M.D. Tenn. May 27, 2021)]. *See Figueroa-Alvarez*, 681 F. Supp. 3d at 1137-38. In *White*, the district court found that it "is clear that flight and nonappearance are not simply interchangeable names for the same concept, nor are they merely different degrees of the same type of risk." 2021 WL 2155441, at *10 (M.D. Tenn. May 27, 2021) (quoting Lauryn P. Gouldin, Defining Flight Risk, 85 U. Chi. L. Rev. 677, 683 (2018)). Rather, "[i]n the context of measuring and managing risks, many defendants who merely fail to appear differ in important ways from their fugitive cousins." *Id.* (citing Gouldin at 683). The *White* court further recognized that "[i]t well may be that someone can pose a risk of 'non-appearance' without posing a risk of 'flight.'" 2021 WL 2155441, at *8. "The latter term seems to connote intentional and active movement to put oneself beyond the supervision of the court and the reach of criminal proceedings; this connotation is not inherent in the notion of 'non-appearance,' a term broad enough to cover negligent or other unintentional, and not just active and intentional, failures to appear." *Id.* "It would seem that 'risk of flight' is a subset of 'risk of non-appearance'—meaning that, depending on the circumstances suggesting a serious risk of non-appearance, a risk of non-appearance may not entail a risk of flight." *Id.*; *see also United States v. Runsdorf*, No. 9:22-08015-WM, 2022 WL 303548, at *4 (S.D. Fla. Jan. 24, 2022) ("And, the question whether there is a serious risk that the defendant will 'flee' is also distinct from the later inquiry whether conditions of release will reasonably assure the defendant's 'appearance'

as required."); *United States v. Gibson*, 384 F. Supp. 3d 955, 965 (N.D. Ind. 2019) ("While Congress chose to use 'serious risk of flight' in subsection (f)(2)(A) to describe th[e] limited scenario under which a defendant will face a detention hearing, Congress settled on very different language when describing the analysis courts must undertake once a detention hearing goes forward."). The court "agree[d] with this reasoning" and held that "risk of flight is distinguishable from, and more narrow than, risk of non-appearance." *Figueroa-Alvarez*, 681 F. Supp. 3d at 1137.

The court then turned to the meaning of "serious risk of flight." *See id.* (noting that "[b]ecause courts interpreting the Act have conflated risk of flight with risk of non-appearance, risk of flight has evaded definition" (citing *White*, 2021 WL 2155441, at *10)). After comparing different interpretations, the court "agree[d] that flight—as that term is commonly understood—involves active movement" "[b]ut flight is not limited to movement outside of the jurisdiction; it can also involve secreting oneself within the jurisdiction by moving to a different locale therein." *Id.* (first citing Nolan, Joseph R. & Nolan-Haley, Jacqueline M., Black's Law Dictionary, at 639-40 (6th ed. 1990) ("Black's Law Dictionary") (defining "flight from prosecution" as "[t]he evading of the course of justice by voluntarily withdrawing one's self in order to avoid arrest or detention, or the institution or continuation of criminal proceedings, regardless of whether one leaves [the] jurisdiction"); and then citing *White*, 2021 WL 2155441, at *10 (acknowledging that a defendant can "actually or at least metaphorically [be] 'on the run' [ ] within the jurisdiction")). "Moreover, flight must be intentional, and not the result of mere negligence or mistake." *Id.* (first citing *White*, 2021 WL 2155441, at *8; and then citing *United States v. Cobix-Espinoza*, 655 F. Supp. 3d 584, 588-89 (E.D. Ky. 2023)). "Finally, the risk of flight referenced in the Act is a 'serious' risk of flight." *Id.* at 1138 (" 'Serious' has a plain meaning." (citing, *inter alia*, Black's Law Dictionary at 1367 (defining "serious" as "important, weighty, momentous, grave, great"))).

"Taken together, then, a 'serious risk of flight' under § 3142(f)(2)(A) is a great risk—beyond average—that the defendant will intentionally and actively move within or outside the jurisdiction to avoid court proceedings or supervision." *Id.* The Court adopts this well-reasoned interpretation of "serious risk of flight."

*United States v. Molina-Orantes*, 2025 WL 1177654, at *4-5 (D. Oregon April 23, 2025).

"More finely put, this means that the Government must demonstrate that it is more likely than not that there is a serious risk that the defendant will flee, not that it is more likely than not that the defendant will flee." *Figueroa-Alvarez*, 681 F. Supp. 3d at 1138 (citations omitted).

In this case, based upon the government's representation an ICE detainer is in place, the parties agree if he is released, he will be immediately taken into ICE custody. Regardless, this Court notes a detention hearing is an important part of the right to due process maintained by any defendant. It has been noted this circumstance:

> suggests the Court's determination of the detention issues is little more than an academic exercise. That suggestion is understandable. But the foundation of the administration of our criminal law depends on the bedrock of due process. That due process demands that every person charged with a federal crime be afforded a presumption of innocence unless proven guilty beyond a reasonable doubt and that deprivation of an individual's liberty prior to trial can occur only in carefully limited circumstances with all the procedural safeguards afforded by the Bail Reform Act. [Defendant], like every person arrested on federal criminal charges, is entitled to a full and fair determination of whether he must remain in federal custody pending trial.

*United States v. Abrego*, 787 F. Supp. 3d 830, 837 (M.D. Tenn. 2025). Such is the case here. And, finally, the Court notes the Bail Reform Act favors release over pretrial detention. *United States v. Orta*, 760 F.2d 887, 890 (8th Cir. 1985).

## III.    ANALYSIS

The plain language of the Bail Reform Act permits the person charged to proffer evidence in connection with a detention hearing. 18 U.S.C. §3142(f). Although the statute neither expressly permits nor prohibits proffers by the government, courts commonly allow the government to proceed in that manner. This Court, in its discretion at detention hearings, generally allows the government to present evidence by way of proffer provided the government presents a competent witness available to be cross examined as to the proffer and the defendant consents to the government proceeding in such manner. In this case, the government was allowed to present evidence by proffer, with no objection by Defendant, presenting Officer Jess Leibold for cross examination by Defendant. Upon specific inquiry by the Court, the government's attorney indicated Officer Liebold was competent to testify as to the matters of the proffer.

The government proffered Defendant is a Columbian citizen who came into the United States and began immigration proceedings. Since November of last year, Defendant was released from his pending deportation proceedings and had a GPS monitor. During his release period, he was required to have a GPS monitor, check in with ICE officers and provide them with his address and living arrangements. Defendant gave ICE officers an incorrect address and his GPS showed him spending most of his time at a separate address.

He worked under a false name at the Bread Garden, in Iowa City, despite not requesting or receiving authorization to work. He gave his employer a fraudulent name, Social Security card and permanent resident card. Neither of those cards were real or authentic, and he would not have been eligible to receive either of those cards.

He ran from ICE police, resisted arrest and ran again after recognizing one of the officers as an ICE police officer from his check-ins for his release in the deportation hearing, as he stated in his post-Miranda interview. He was stopped on the Bread Garden property.

Upon cross examination as to the government's proffer by Defendant's counsel, Officer Jess Leibold testified he thought Defendant was initially released with an ankle monitor in November 2024, but did not know where. He testified he read the case officer's report, and the report had information Defendant was staying at a different address. He confirmed he did not know the address Defendant was authorized to live at or the different address Defendant was alleged to be living. Defendant was to check in with ICE and go to immigration hearings, but Officer Leibold did not know when the hearings were set. Officer Leibold knew the proceedings dealt with removal.

Officer Liebold testified the only allegations of Defendant are that he provided a fake Social Security card and a lawful permanent resident card. He testified there was no allegation of

violence or anything of that nature. Officer Leibold first knew about Defendant being in Iowa City in September of 2025 when the arrest took place in Iowa City. He did not know the steps ICE took to locate Defendant. Officer Leibold testified he did not know how ICE discovered where Defendant was working, the alternate address and where he was living.

Officer Leibold was not involved in the arrest of Defendant. He testified he had only "briefly" reviewed the footage of Defendant's arrest. Officer Leibold's "understanding" was ICE agents identified themselves to the Bread Garden manager but did not know if they identified themselves to Defendant. There were members of the public in the area when Defendant was arrested who asked the ICE agents to identify themselves, but no identification was made. At the time of the arrest, the ICE agents were in plain clothes. He testified ICE officers have a uniform they could have worn – a vest with "Police" on the outside.

Defendant's counsel proffered Defendant has been working at the Bread Garden since May of this year. And, from discussions with Defendant's immigration attorney, he is in the process of petition the immigration court for asylum, with the petition set to be filed within the week. Defendant's counsel also indicated Defendant's release plan was for him to reside with Eva Sandith Castro Fuentes, who is his infant child's maternal grandmother, at her residence in Iowa City.

In this case, there is no dispute the government has the burden of proof to demonstrate it is entitled to a detention hearing in the first place and, if so, that there are no conditions to reasonably assure the appearance of Defendant in court. While the Court understands Officer Liebold was not assigned to Defendant's case, the Court was assured he was competent to testify as to the government's proffer. Based upon his testimony, it is clear Officer Liebold was *not* competent to testify as to the proffer. Indeed, his testimony and lack of knowledge as to basic, material facts,

undermines the government's proffer. For this reason, the government has not met its burden of proof.

Even considering the government's proffer without considering Officer Leibold's testimony undermining it, nothing the government presented showed a serious risk of flight – a great risk—beyond average—that Defendant will intentionally and actively move within or outside the jurisdiction to avoid court proceedings or supervision. It was alleged he was not living at the residence he gave to ICE, yet no evidence was presented to how far from that address he was actually residing. For serious risk of flight, it is important if he was not at the correct address, yet still in the same community, as opposed to a different address miles away. No evidence was shown to demonstrate he was using fraudulent documents for hiding his identity from ICE or to be able to travel, undetected and surreptitiously. Instead, he was apparently using them to work, as he has a family to support. Indeed, the conditions of his release from ICE custody included a GPS monitor which he, apparently, wore in compliance with those conditions, as that is how ICE was able to monitor and locate him. The government did not show an incentive to flee, or that Defendant had the resources that would enable him to flee.

Even if the government met its burden regarding serious risk of flight to entitle it to a hearing on the request for detention, the government failed to meet its burden to show there are no conditions to reasonably assure the appearance of Defendant. Defendant's counsel, at the detention hearing, summarized the reasons aptly:

> Turning first to the threshold determination, I don't believe that the Government has met their burden that Mr. Gonzalez-Ochoa is a serious risk of flight. For one, the running/resisting arrest argument provided by the Government is contextualized in several ways. First, the ICE agents were in plain clothes. Second, the officer who testified today could not say that Mr. -- or that the ICE agents identified themselves as such to Mr. Gonzalez-Ochoa and could not say either that they identified themselves as ICE agents to the other members of the public who were present at the time when the arrest took place.

But even if Mr. Gonzalez-Ochoa knew for a fact they were ICE agents and was trying, quote/unquote, to run away, this is, frankly, to me an immediate reaction to a highly stressful situation. But it's not telling of whether Mr. Gonzalez-Ochoa would appear on any further court hearings in front of this Court on his federal criminal case. What would be most relevant is if Mr. Ochoa had a history of failures to appear or the like, but there is no evidence of that nature. Ultimately, it's not a -- just any risk of flight. It has to be a serious risk of flight.

Next, as to the issue that Mr. Gonzalez-Ochoa was fleeing or hiding by providing wrong information or wrong employment information or not living at the correct house, their witness today could not indicate which house he was supposed to be residing in and which house he actually didn't reside at.

And also, I find somewhat ironic that GPS monitoring, a condition that was imposed on him, is one of the reasons that now is being alleged as linking him to violating other conditions. That, to me, suggests that Mr. Gonzalez-Ochoa has been compliant or had been compliant with at least some conditions imposed by ICE or by immigration authorities.

Going into the 3142(g) factors one by one. Unlike a lot of cases that this Court sees, the nature and circumstances of the offense, I would suggest, support release, or at the very least, do not heavily support the Government's request for detention. As this Court could see, most of these charges -- the three charges are just per mutations of fraud-based allegations for purposes of employment. Not instead allegations that would signal -- or signal heavily that Mr. Gonzalez-Ochoa is a flight risk.

As far as the weight of the evidence subsection goes, I would suggest to the Court that there is not a whole lot of evidence signaling the strength of the Government's case.

His history and characteristics, the next factor, I believe, Your Honor, weighs heavily in favor of his release. I disagree with the Government that there is not much relevance in this factor, I believe there is quite a bit of relevance, even based on the pretrial services report itself. For one, it shows that he has spent about a year in the community, suggesting ties to the community. Another, it shows he has family in the community, also linking to ties to the community and checking against a potential risk of flight. For another, his criminal history is almost zero. The only criminal history that shows in the pretrial services report dates to October 25 of 2024, which is when -- my understanding Mr. Gonzalez-Ochoa was first noted by -- or was first an interaction -- first interacted with immigration authorities.

In addition, based on the proffer that I provided, Mr. Gonzalez-Ochoa has been working, has been employed at the Brand Garden Market since May. And more importantly, has also, from my understanding, sought to receive asylum, at least

petitioned -- or will petition immigration authorities for him to receive asylum. I would suggest, Your Honor, that the act of Mr. Gonzalez-Ochoa asking for asylum also shows that he is not a flight risk.  He is trying at this point to comply, to the extent he can, with any duties imposed on him.  If nothing else, it shows that he is not a person who would run away, if given the opportunity.

The last factor is the nature and -- and seriousness and the danger to any person. Clearly, there is no allegation and the Government is not even asking for detention based on danger. And for that reason, that factor also supports release since there is no danger, from what I could tell, to a specific member of the community or the community at large.

Considering all these factors, this Court concludes that the government has failed to meet its burden of proof to show Defendant is a serious risk flight – that he will intentionally and actively move within or outside the jurisdiction to avoid court proceedings or supervision. In addition, the government has failed to meet its burden to show there are no conditions to reasonably assure Defendant's appearance. Accordingly, release with conditions is appropriate in this case.

## IV.    CONCLUSION

For the reasons stated, the Court denies the government's request for a detention hearing and request for detention and orders Defendant to be released at 10:00 a.m., December 8, 2025. Defendant shall, upon release, immediately report to the United State Probation Office, U.S. Courthouse, 131 East Fourth Street, Davenport, Iowa. A further order will follow with the complete conditions of release, which shall include location monitoring and home confinement.

**IT IS SO ORDERED.**

**DATED** this 3rd day of December, 2025.

_____
STEPHEN B. JACKSON, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE